G. Haskell and Corrine J. Thompson v. Commissioner.
Thompson v. Commissioner
Docket No. 73957.
United States Tax Court
T.C. Memo 1963-147; 1963 Tax Ct. Memo LEXIS 198; 22 T.C.M. (CCH) 696; T.C.M. (RIA) 63147; May 28, 1963
*198 Held, a part of the deficiency for the year 1953 and a part of the underpayments determined by the respondent for each of the years 1954 and 1955 were due to fraud with intent to evade tax. Gerald C. Smoak for the petitioner G. Haskell Thompson. Donald C. Knickerbocker for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax and additions to the tax as follows: Sec. 293(b)
Sec. 6653(b)
Year
Tax
I.R.C. 1939
I.R.C. 1954
1953
$2,037.26
$1,018.63
1954
2,972.61
$1,486.31
1955
1,603.96
801.98
$6,613.83
$1,018.63
$2,288.29
At the trial, counsel for petitioner G. Haskell Thompson orally conceded the issue *199 raised by subparagraph (d) of paragraph 4 of the petition, covering the matter of petitioner's right to claim four nephews as dependents in each of the years 1954 and 1955. The major issue is whether petitioner derived taxable income in 1953, 1954, and 1955 from participation in an illegal liquor conspiracy, which income was not reported, and whether any part of the failure so to report was due to fraud. Several minor issues were raised, but no testimony was offered with reference to those issues. Findings of Fact Petitioners G. Haskell Thompson and Corrine J. Thompson, his wife, residents of Walterboro, Colleton County, South Carolina, filed joint Federal income tax returns for the taxable years 1953, 1954, and 1955 with the district director of internal revenue, Columbia, South Carolina. G. Haskell Thompson was the sheriff of Colleton County, South Carolina, in 1953, 1954, and 1955. On their returns for 1953, 1954, and 1955 petitioners reported income in the form of wages from Colleton County; income from G. Haskell Thompson's rental property; income (or loss) from farming operations; commissions from a seed company and from "R. Murdaugh," and partnership income from G. Thompson *200 Sons. On their return for 1953 the Thompsons claimed a deduction of $550 for depreciation on a 1953 Chevrolet automobile and a deduction of $120 for gasoline taxes. On the 1954 return petitioners claimed a deduction of $140 for gasoline taxes. On June 5, 1956, G. Haskell Thompson, along with 29 others, was indicted in the United States District Court for the Eastern District of South Carolina for participation in an illegal liquor conspiracy. Upon trial, he was convicted on 16 counts and was sentenced to 7 years and fined $3,000. He served 37 1/2 months. In January 1952, Joe Padgett, a bootlegger, and Berkley Woods, a magistrate in Colleton County, went to see G. Haskell Thompson for the purpose of getting permission to make whiskey in Colleton County without fear of being raided by Thompson. At this meeting Padgett reached an agreement with Thompson whereby he, Padgett, could make whiskey for $200 a month, to be split between Thompson and Woods. It was agreed Thompson would take his payoff in whiskey at $20 a case. Thompson directed Padgett to deliver his share of the payoff to Woods. Padgett originally took Thompson and Woods 10 cases a month. The amount was later raised *201 to 12 cases a month. Padgett made payments of whiskey in 1953 and 1954 in accordance with the agreement reached in January 1952 between himself, Thompson, and Woods. Padgett was raided by Thompson twice. The first occasion was in January 1952 before Padgett had the meeting with Thompson and Woods at which the payoff agreement was reached. The second occasion was in March 1954 when he put up a still and did not advise Thompson that he was doing so. Padgett stopped making whiskey in Colleton County because he was raided so many times by the Federal agents he went broke. Riddick Herndon was appointed a special deputy by Thompson in 1952 or 1953. Herndon did not receive any pay as special deputy. Herndon was the collection man for an illegal liquor operation from 1953 to 1955. He made collections for Thompson during each of those years. At various times during the period he was collection man, Herndon made collections from many individuals who were engaged in the sale of moonshine liquor, and also from Hallie Blocker, Gaston Beach, and Herman Ulmer who were operating stills. The amounts collected ranged from $15 a month to $100 (or 5 cases of whiskey) a month. Thompson determined *202 the amount collected from each individual on the basis of the amount of business that that individual handled. The payments were made on a month-to-month basis. Herndon kept 20 percent of the amounts collected for his part as collection man and turned the balance over to Thompson. During the years 1953 to 1955, Herndon owned an interest in five stills. The first one was set up in the Cook's Hill area. Herndon and David Carter were the owners of that still. Ulmer and Herndon were the owners of the other stills. Herndon made payoffs of $25 or $50 on a monthly basis to Thompson from the operation of all of those stills. George McPeake operated a still on Herman Tuten's land in the Frazier Township section of Colleton County in 1955. Herndon made the arrangements for the location of that still at Thompson's direction. McPeake was to pay Tuten $50 a month as rent, and to pay Thompson 15 cases of whiskey a month as a payoff. On one occasion 15 cases of whiskey were delivered by McPeake to a wooded area in the Cook's Hill section. There was a hunting club in this area and Herndon would tell the people where to place the whiskey so that Thompson could make arrangements for someone *203 to pick it up. The respondent determined that petitioner had unreported income of $7,576 for 1953; $9,476 for 1954; and $4,040 for 1955. In a statement attached to the deficiency notice, the respondent explained the unreported income of $7,576 for 1953 as follows: (a) It is held that during the taxable year ended December 31, 1953 you failed to report taxable income in the amount of $7,576.00 derived from participation in an illegal liquor conspiracy. Accordingly, your taxable income has been increased by this amount. Section 22(a) of the Internal Revenue Code of 1939. Similar explanations were made for the determination of unreported income for 1954 and 1955. A part of the deficiency for the year 1953 was due to fraud with intent to evade tax. A part of the underpayments determined by the respondent for the years 1954 and 1955 was due to fraud. Opinion The respondent has determined substantial deficiencies for the years 1953, 1954, and 1955 and, as the statute of limitations has not run for those years, the burden rests on the taxpayers to prove that the deficiencies as determined were not due. The burden of proving fraud rests by statute on the respondent. With the *204 exception of a few minor adjustments in income and deductions, the entire deficiency is arrived at by including in income sums said to represent payoffs to the petitioner for giving protection in his capacity as a sheriff of Colleton County, South Carolina, to various persons engaged in the manufacture and sale of liquor in violation of both the Federal and state laws. Some several years ago the petitioner was indicted and tried in the Federal District Court of the United States for the Eastern District of South Carolina, along with 29 others, on a charge of conspiracy to violate the laws of the United States having to do with the operation of stills for the manufacture of intoxicating liquors. The petitioner was convicted on 16 counts and sentenced to serve a term of 7 years and actually did serve 37 1/2 months. It is the money paid to petitioner by way of payoffs, which money was never reported by him in his income tax returns for the years in question, that forms the basis of the fraud charge. We have heard the testimony of many witnesses in which they have denied ever paying petitioner Thompson any money for protection, and other testimony that these self-same persons gave *205 money or liquor to a collector for Thompson to gain for them protection from prosecution by state authorities. While, as counsel for petitioner argues, the testimony of many of respondent's witnesses comes from co-conspirators and admitted law violators, nevertheless the whole course of these transactions establishes to our satisfaction that petitioner did receive money or liquor for giving protection and he did not report the sums so received in his income tax returns for 1953, 1954, and 1955, as found by respondent. It would have been more satisfactory if the actual sums paid to petitioner had been testified to in detail rather than to have to deal with the lump-sum figures determined by the Commissioner. But the law is that the Commissioner's determination comes to us as prima facie correct, and the burden of establishing a lesser or different amount has been and is placed upon the petitioner. The testimony in the record does not furnish a basis for determining a lesser amount of tax than that found by respondent in his deficiency notice. On the record, we cannot escape the definite conclusion that the failure of petitioner to include the disputed income in his returns for the *206 several years was deliberate with the clear intent to evade the tax due. Therefore, the additions to the tax for fraud were properly claimed by respondent. The petitioner abandons some of his allegations and has offered no proof as to others. Decision will be entered under Rule 50.